Frederick Baker and Marjorie Baker v. Commissioner.
Baker v. Commissioner
Docket No. 38734.
United States Tax Court
1953 Tax Ct. Memo LEXIS 3; 12 T.C.M. (CCH) 1456; T.C.M. (RIA) 54013; December 31, 1953
*3 Robert E. Kline, Esq., for the petitioners. Edward L. Cobb, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $4,350.02 in the income tax of the petitioners for 1949. The issues for decision are: 1. The deductibility under section 23 (u) of premuims paid by Frederick on insurance on his life; 2. The deductibility of an alleged farm loss; and 3. Whether a bad debt was a debt and, if a debt, whether it was a business or nonbusiness debt. Findings of Fact The petitioners, husband and wife, filed a joint return for 1949 with the collector of internal revenue for the 23rd District of Pennsylvania. Frederick and his first wife, Ruth, were married in 1916 and divorced on March 20, 1947. The following is quoted from the decree of divorce: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the agreement executed by plaintiff and defendant, dated April 12, 1946, conformed copy of which has been introduced into evidence, and the parties are ordered and directed to comply with the terms thereof. [thereon]" The agreement of April 12, 1946 provided, inter alia, that Frederick would pay Ruth annually *4 for her support and maintenance 25 per cent of his income but not less than $2,000 as long as she "shall live and not remarry"; Frederick would pay the premiums on and keep in effect free of incumbrances, two policies of insurance on his life in the total amount of $25,000 of which Ruth was to continue to be the primary beneficiary and possessor, but not the owner, as long as she lived and remained unmarried; the policies were to be returned to Frederick if Ruth died or remarried while Frederick was still alive; and the proceeds of the policies were to be paid to Ruth on the death of Frederick, if she survived him and was still unmarried, and thereupon all payments for her support and maintenance were to cease. Ruth could not benefit from the policies if Frederick carried out the agreement and survived her death or remarriage. Frederick paid premiums of $1,151.80 on the policies during 1949. He otherwise carried out the provisions of the April 12, 1946 agreement. Ruth was alive, unmarried and in possession of the policies at the end of 1949. Frederick did not claim a deduction on his 1949 return for the premiums paid on the policies. The 1949 payment made one of the policies which *5 was for $20,000 a paid-up policy. Frederick was graduated from college in 1912 and received the degree of Mechanical Engineer. He was a business consultant until he went to Blaw-Knox Company in 1943 where he is Treasurer. He will reach retirement age in 1955 and his pension will be about $400 a month. He had had no farming experience. The petitioners, in December 1947, took possession of a property in Franklin Township, Pennsylvania, consisting of about 4.73 acres improved with a six-room brick residence and other buildings. The record does not show how much of the tract was tillable. The petitioners thereafter occupied the house as their residence. The cost of the property was about $21,000. The land had not been cultivated for years and was in poor condition. The petitioner intended to develop some undisclosed part of the land to obtain income from it to help pay the taxes on the property. His operations on the land have always resulted in losses. No crop was planted during 1948. Frederick has not been able to devote much of his time to the farming operations. The following table shows the receipts, expenditures, amounts claimed for depreciation and the losses reported from *6 the farming operations for the years 1948 through 1952: 1948
1949
1950
1951
1952
(Buckwheat)
(Grain)
(Hay)
(Hay)
Total receipts
None
$ 69.12
$ 121.18
$180.00
$ 60.00
Expenditures: Labor hired
$ 113.00
64.50
507.77
26.00
Machine hire
357.22
233.30
113.55
60.00
Fertilizer and lime
37.50
390.91
20.00
Insurance
81.95
Auto upkeep
75.00
72.00
140.67
104.20
35.00
Small tools
185.05
Seed
36.39
10.00
Depreciation: Utility building
18.75
40.54
49.65
49.65
49.65
Tractor
63.54
116.20
116.20
116.20
116.20
Station wagon
90.13
216.30
216.30
216.30
216.30
Snowplow
10.00
10.00
10.00
Cultivator
2.93
2.93
2.93
Harrow
3.44
6.87
6.87
Mower
7.90
15.79
15.79
Plow
2.54
5.07
5.07
Fence
12.04
36.13
Total expenses
1,022.34
1,196.95
1,196.84
589.14
507.15
Loss claimed
1,022.34
1,127.83
1,075.66
409.14
447.15
The record does not show how much of the land was involved in the farming operations. Frederick, Dennis L. Harmon and David D. Buckley formed a Maryland corporation in February 1940. It had an exclusive license on certain patents. Frederick was the *7 largest single stockholder owning somewhat more than 50 per cent of the shares. He advanced $16,802.70 to the corporation between July 15, 1940 and May 1941 for which he received negotiable demand notes bearing 6 per cent interest. Those notes were not securities as defined in section 23 (k) (3). The advances were loans and were not investments in the capital of the corporation. The debt became worthless in 1949. The loan was not made in the course of any business regularly carried on by the petitioner. The Commissioner, in determining the deficiency, disallowed the farm loss and the bad debt deduction without explanation. The insurance premiums were not deducted on the return. All facts stipulated by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: It is not at all certain that the payments of the premiums on the life insurance policies will ever benefit Ruth since her death or remarriage while Frederick remains alive would terminate her rights in connection with the policies. Consequently, the payments are not income to Ruth under section 22 (k) and not deductible by Frederick under section 23 (u). , *8 affd. ; . The following answers are from Frederick's testimony: "Q. What made you want to go onto a farm?" "A. Primarily, the purpose was the realization that at some time or other I would be retiring from business. I wanted to do something that would supplement a retirement income, and do something that I felt that I would be able to do and do with competence - and not simply deteriorate into a slothful individual." * * *
"Q. After you had retired, you intended to put it on a paying basis, is that it?" "A. I don't say I intended to wait until after I retired to put it on a paying basis. I wanted to put it on a paying basis as soon as possible. I wanted to get it on a basis that would supplement my retirement income. My retirement took place two years earlier than I had looked forward to." He had not retired in 1949. He stated that he had not been able to devote much of his time to the farming operations. Details of the alleged farming operations have not been shown. The paucity and kinds of crops planted; the lack of attention to and intelligent study of the farming activities and problems; the *9 absence of any reasonable plan for a profitable operation; the meager receipts from farm products; and other evidence fairly preponderates to show that the farming operations were not actually carried on during 1949 for the purpose of making a profit then or later but were incidental to the occupancy of the tract as a home. Frederick had a vague plan to take up farming seriously at some future time but he was not in the business of farming in 1949. He was merely pottering with the land except as its improvement and use may have contributed to the attractiveness of the place as a residence. The evidence as a whole does not justify the allowance of the claimed deduction. The Commissioner contends that the $16,802.70 was a capital investment in the corporation by the petitioner but the evidence shows that it was not but, on the contrary, was a loan. There is no dispute that the debt became worthless in 1949. The Commissioner contends, however, that it was a non-business bad debt, deductible in accordance with the provisions of section 23 (k) (4). No claim is made that the notes were securities within the definition of section 23 (k) (3). The petitioner's contention is that this loan *10 was made in the course of some business which he was conducting, but the authorities are against him. The evidence shows that the loan was not made in connection with any business which he was conducting so as to make it a business loss. He was not in the business of lending money. These loans were isolated ones. The business of the corporation is not the business of Frederick. The deduction as a business bad debt must be disallowed. See , and cases there cited. Decision will be entered for the respondent.